IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE: JOAQUIN AYMAT SOTO

CASE NO. 12-02959 (MCF)

CHAPTER 13

Debtor

**OPINION AND ORDER**

The case is before the Court on the Chapter 13 Trustee's motion requesting the Debtor to modify his plan dated October 2, 2014. (Docket No. 135). For the reasons set forth below, the Court denies the motion to modify the Debtor's confirmed plan.

**I.    FACTS AND PROCEDURAL HISTORY**

The Debtor filed for bankruptcy relief under Chapter 13 on April 18, 2012. (Docket No. 1). The Debtor and non-filing spouse's income is derived from social security, unemployment benefits and the financial assistance of a son in the amount of $300. After paying all household expenses, the Debtor's confirmed plan proposes to pay $300 for a period of sixty months. (Docket Nos. 86 and 90). The Debtor's statement of current monthly and disposable income (Form 22C or "the Means Test") reflects that the Debtor's median family income is below the average family income for Puerto Rico and his household size. (Docket No. 17, Means Test, line 23).

After the resolution of several contested issues, the Chapter 13 plan was confirmed on October 10, 2013 (Docket No. 90). On December 11, 2013, the Debtor filed an adversary proceeding against Doral Bank for violation of the automatic

-1-

stay. (Docket No. 1 in Adversary No. 12-0419). The parties filed a stipulation whereby it was agreed that all matters would be settled and Doral Bank would pay the Debtor the amount of $3,000 and $2,000 for legal fees. (Docket No. 28 in Adversary No. 12-0419). On August 5, 2014, the Chapter 13 Trustee filed a motion requesting modification of the Chapter 13 Plan to increase the base of the plan by $3,000 to include the proceeds of the settlement. (Docket No. 135). The Trustee's basis to include the funds are that "the bankruptcy case schedules and the confirmed chapter 13 plan, dated October 2, 2013, do not account or provide for the proceeds of $3,000 from the settlement of the adversary proceeding No. 12-00419."(Docket No. 135 at 1).

The Debtor opposed by stating that he needed the funds to make necessary repairs to his roof. In addition, he alleged that the Trustee's motion was procedurally incorrect in seeking to modify the confirmed plan within the adversary proceeding without giving proper notice. At a hearing to consider the stipulation, the Court approved the stipulation and ordered the Debtor and Chapter 13 Trustee to file their respective positions in the legal case regarding the use of the monies. (Docket No. 36 in Adversary No. 12-0419).

After both parties filed their positions in the legal case, the Court held a hearing to consider the matter. The Chapter 13 Trustee, the movant in the proceedings, declined to call the Debtor as a witness. The Trustee did not present any witnesses or request that any documents be admitted as evidence. He alleged that no testimony was necessary and that the Court can rule based on the parties' arguments. The Debtor argued that the Trustee is the movant in the proceedings and must meet the burden of proof that the funds are disposable income necessary to fund the plan. The Debtor testified on his behalf, with the

assistance of a certified translator, about the condition of his home's roof and the need for its repair. He stated that he is to receive the amount of $3,000 from an adversary proceeding and wishes to use an amount necessary for the repair of his roof and tender the balance, if any, to the Chapter 13 Trustee. He testified that his roof needs repair and sixteen photographs were admitted as evidence that reflect the need for repairs (Debtor's Exhibit One). The photographs demonstrated that the Debtor's roof has perforations, leaks, water accumulation on the surface, humidity and a large crack. The interior ceiling of his dwelling has bubbles in the paint. According to his testimony, the roof is in bad shape at present and if it is not repaired, the situation will get worse. The Debtor sought help by looking up roof repair services in the newspaper. He has experience with roof repair because he has had problems with his roof for the last 15 or 20 years and has had to do some of the repairs on his own, when he was physically able to do so. He needs the following services: roof cleaning, the filling of cracks to avoid leaks, the leveling out of surfaces where the water accumulates and an enlargement of the existing drains so that the water flow out properly. The Debtor admitted into evidence two quotes for the limited purpose of showing that he received proposals for the roof repair: Construction Y Remodelaciones Polanco, Inc. for $2,600 (Debtor's Exhibit Two) and Handyman Express for $2,800 (Debtor's Exhibit Three).

Upon cross examination by the Chapter 13 Trustee, the Debtor stated that if he did not fix the roof, there is a risk that someone in his family might slip and fall due to the leakage that runs from the ceiling to the floor. At present, no one in his family was suffering from health problems due to the humidity.

The Trustee argues in his closing remarks that the Debtor has no actual need to use the $3,000 for roof repairs because he has $6,000 in cash as reflected in Schedule B and he can also sell several of the fourteen firearms that he owns to raise the cash necessary for the repair of the roof. His position is that the Debtor should be required to use exempt and non-exempt property to perform the repairs on the roof.

At the hearing, the Court questioned the Trustee about the practical and legal implications regarding the sale of firearms by a private individual to a third party and whether the Debtor still retained the $6,000 in cash reflected on Schedule B; since two and a half years have elapsed since the petition was filed on April 18, 2012. The Trustee failed to address these inquires and there was no evidence presented to substantiate the Trustee's claim that the Debtor still has $6,000 in available cash.

The Debtor opposes the Trustee's assertions and alleges that the Chapter 13 Plan, as confirmed, need not be modified because it complies with the creditor's best interest test and other confirmation requirements.

After hearing the parties' closing arguments, the Court took the matter under advisement.[1]

## II.  POSITION OF THE PARTIES

The Chapter 13 Trustee seeks to modify the confirmed plan, pursuant to 11 U.S.C. § 1329 to include $3,000 received by the

---

[1] The findings of fact and conclusions of law herein shall constitute the Court's findings of fact and conclusions of law, pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding, pursuant to Fed. R. Bankr. P. 9014.  To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

Debtor in a settlement agreement, alleging that these funds are property of the estate. Furthermore, the Trustee asserts that if the Debtor needs to perform roof repairs, he should use $6,000 cash that he listed on Schedule B or sell his partially-exempt firearms, also listed in Schedule B, to finance the repairs.[2]

The Debtor opposes the Trustee's motion alleging that he requires the funds to perform repairs on his roof; and thus, even though he does not dispute that the $3,000 are property of the estate, it is not disposable income required to be paid into the plan. He also avers that the confirmed plan complies with the liquidation value of the case and other confirmation requirements; and therefore, there is no need for modification.

In addition, the Debtor asserted that the Trustee is the movant in this proceeding, and that as a result of the proceeding, he was forced to hire a certified translator whose fee is one hundred dollars ($100.00) per hour. He requests that this fee be paid through the Chapter 13 Plan.

## III. LEGAL ANALYSIS AND DISCUSSION

To resolve whether the Debtor's confirmed plan may be modified, the Court looks to Section 1329(a)(1)of the Bankruptcy Code which provides for the modification of a confirmed Chapter 13 plan upon the request of the Trustee to increase or reduce the amount of payments on claims of a particular class provided by the plan.[3]

Section 1329 does not set forth a criterion for granting a modification, other than the plan as modified must comply with all applicable provisions of the Code. 11 U.S.C. § 1329(b),

---

[2] The Debtor listed 14 firearms as personal property in Schedule B and claimed a $200 exemptions over each of the 14 firearms in Schedule C. (Docket No. 17).

[3] 11 U.S.C. § 1329(a)(1).

incorporating by reference 11 U.S.C. § 1325(a). "This means that the Plan as modified must be proposed in good-faith. 11 U.S.C. § 1325(a)(3). Also, it must comply with the "best-interests-of the creditors" test and the "ability-to-pay" standard. 11 U.S.C. § 1325(a)(4-6)." Barbosa v. Soloman, 235 F.3d 31, 38 (1st Cir. 2000).

> ...Congress saw fit to allow the trustee and holders of unsecured claims to seek an amendment to the confirmed plan in order to carry the ability-to-pay standard forward in time, allowing upward or downward adjustment of plan payments in response to changes in the debtor's financial circumstances which affect his/her ability to make payments.

Id. at 40.

According to the standard established by the First Circuit case of Barbosa, the Chapter 13 Trustee must advance a "legitimate reason" for the modification of the plan and strictly conform to the three limited circumstances set forth in Section 1329. He must bear the burden of showing show that there has been a change in the Debtor's "ability-to-pay", a standard that survives throughout the duration of the plan. Barbosa, 235 F.3d at 40-41; In re Miguel Gonzalez Salva, 2009 Bankr. LEXIS 2707 (Bankr.D.P.R. 2009).

The court in Barbosa,[4] decided that the Chapter 13 Trustee met his burden upon requesting a modification of the plan. The debtors in Barbosa received proceeds from a sale of property that had significantly appreciated in value[5] since the schedules were filed at the inception of the case. This particular receipt of funds altered the debtors' financial circumstance which prompted the Chapter 13 Trustee to request a modification

---

[4] Barbosa, 235 F.3d at 41.
[5] The debtors realized through the sale an appreciation in value of about 215% of the stipulated value at of the property at confirmation. Barbosa, 235 F.3d at 41.

of the plan, pursuant to Section 1329 of the Bankruptcy Code. The First Circuit agreed with the bankruptcy court, and as a result, modification of the plan under Section 1329 of the Bankruptcy Code was required because the debtors should not receive a windfall from the sale of property. Barbosa, 235 F.3d at 41.

The question here is whether the settlement proceeds constitute a windfall for the Debtor or a change in his financial circumstance, which would prompt a required modification of the plan.

By contrast with the situation in Barbosa, in the instant case, the Debtor's retention of settlement proceeds would not be a windfall within the context of Barbosa, since such funds are necessary for essential maintenance of Debtor's homestead. Upon examination of the evidence, the Debtor's testimony and photographs of the roof, the Court finds that the roof is in dire disrepair and that the funds are required to repair the same. The Debtor has clearly demonstrated that most, if not all, of the settlement funds are necessary for that purpose.

The Trustee brought forth no evidence that the repairs were unnecessary, or that the Debtor's repair expenses were excessive. In addition to the roof repair expense, the Debtor is now faced with the expense of paying the certified translator present at the hearing.

Furthermore, the Chapter 13 Trustee asserted that even if the roof repair is necessary, the Debtor should perform it by using other resources that he has, both exempt and non-exempt property,[6] to raise cash instead of using the settlement proceeds. The Court rejects this argument as well. With respect

---

[6] The Debtor listed $6,000 in cash on Schedule B (non-exempt property) and 14 firearms as personal property in Schedule B (partially-exempt property) and claimed a $200 exemptions over each of the 14 firearms in Schedule C (Docket No. 17).

to exempt property, this argument is clearly in conflict with the Supreme Court's recent decision in Law v. Siegel, 134 S.Ct. 1188(2014), which states that a bankruptcy court does not have statutory authority to issue any order that surcharges an exemption taken by a debtor.  The Trustee's request that the Debtor be required to use exempted property[7] to repair his roof, is flawed to the extent that it impairs exemptions over the property.  In addition, it was not explained to the Court how a private citizen could sell handguns to a third party when the local government regulates licenses regarding possession of a handgun.

With respect to the Debtor's non-exempt property, all of Debtor's scheduled property was taken into consideration to comply with the liquidation value of the estate at the time of confirmation, including the $6,000 in cash and the (non-exempt) firearms listed on Schedule B. This calculation is done with property owned at the time of the petition and reflected in the schedules to determine if the plan meets the confirmation requirements of the creditors' best interest test. 11  U.S.C. § 1325(a)(4).  This calculation considers only property that would have been liquidated in a Chapter 7 case filed on the date the chapter 13 petition was filed.[8] Since the Debtor's scheduled non-exempt property was already taken into consideration when the plan was confirmed in a process which required compliance with the requirements of Section 1325(a)(4), the Chapter 13 Trustee may not require the Debtor to "use" or "sell" any of these assets.

---

[7] The Chapter 13 Trustee proposed that the Debtor should sell his partially exempted firearms to finance the roof repairs.

[8] In re Forbes, 215 B.R. 183, 187-188 (B.A.P. 8th Cir. 1997); In Re Jacobs, 263 B.R. 39, 44 (Bankr. N.Y. 2001); David Gray Carlson, Modified Plans of Reorganization and the Basic Chapter 13 Bargain, 83 AM. Bankr. L.J. 585, 593 (2009); Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶1329.05 (16th ed. 2014).

Applying the legal standard in Barbosa, the Court holds that the Chapter 13 Trustee has failed to purport a legitimate reason for requesting a modification of the confirmed plan. The Chapter 13 Trustee claims that Debtor's financial circumstances have improved because he will be receiving $3,000 from the settlement of an adversary proceeding. We see no positive change in Debtor's financial circumstances. Instead Debtor's living conditions will worsen if the roof is not repaired with the settlement proceeds. Section 1329 of the Bankruptcy Code is not brought into play at this time, since we are faced with an unaltered financial situation. For the aforementioned reasons, the Court finds that the Chapter 13 Trustee has failed to meet his burden in showing a legitimate reason for modification of the confirmed plan.

### ORDER

The Court authorizes the use of the proceeds of the settlement for necessary repairs to the Debtor's residence. Furthermore, the Debtor is also authorized to pay the certified translator from these funds. If any amounts are remaining, he shall tender them to the Chapter 13 Trustee.

The Chapter 13 Trustee's motion to modify the confirmed plan is denied (Docket No. 135).

**SO ORDERED**.

In San Juan, Puerto Rico, this 23 day of December, 2014.

BY THE COURT:

*Mildred Caban*

MILDRED CABAN FLORES
U.S. Bankruptcy Judge